UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
JACOB Y. SHIMON,                                             :
                                                             :
                                   Plaintiff,                :   **MEMORANDUM**
                                                             :   **DECISION AND ORDER**
                   - against -                               :
                                                             :   18-cv-2959 (BMC)
EQUIFAX INFORMATION SERVICES LLC,                            :
                                                             :
                                   Defendant.                :
----------------------------------------------------------- X

**COGAN**, District Judge.

In this FCRA action, plaintiff moves to amend his complaint for a third time as well as for partial summary judgment. Defendant cross-moves for summary judgment. For the reasons set forth below, the information about which plaintiff is complaining on his credit report was in fact accurate, and that holding requires dismissal of all of his claims. Plaintiff's motion to amend his complaint and for partial summary judgment is therefore denied, and defendant's motion for summary judgment is granted.

### BACKGROUND

According to plaintiff's second amended complaint, in March 2013, a debt collection company obtained a default judgment against plaintiff in the Civil Court of New York, Kings County. Later that year, the Kings County Civil Court vacated the judgment. Nevertheless, defendant continued to list the judgment on plaintiff's credit report. Upon plaintiff disputing the statement, defendant began to list the judgment as "Satisfied."

Plaintiff, however, maintained that even the "Satisfied" notation was erroneous and misleading, and could negatively affect his credit. He therefore requested that defendant remove

mention of the judgment altogether, believing that saying the judgment was "Satisfied" was inconsistent with a vacated judgment. Plaintiff's entreaties were unsuccessful.

Plaintiff then requested that defendant disclose its method of verifying the judgment information, pursuant to 15 U.S.C. § 1681i, and that it provide a detailed report of the sources of defendant's information, pursuant to 15 U.S.C. § 1681g. Defendant sent plaintiff a reinvestigation response letter in addition to turning over his full credit file. The response letter represented that defendant received the judgment information from the public records of "local, state and federal courts." It further stated that "we have reviewed the judgment information" and provided contact information for the Kings County Civil Court (the "Civil Court").

Plaintiff alleges, however, that defendant "obtains all its public records information from third party vendors/furnishers such as LexisNexis Risk Data Retrieval Services, LLC" ("Lexis"). According to plaintiff, defendant thus "misle[d] the consumer into believing that it has conducted a review with the courts." Additionally, plaintiff claims that instead of investigating disputed information and substantively responding to the consumer, defendant "has created form letters which are specifically used to misinform consumers" as to where defendant gets its information and how it verifies that it is accurate.

Plaintiff brings claims against defendant for (1) willfully and negligently failing to maintain and/or follow reasonably accurate credit reporting procedures, in violation of 15 U.S.C. § 1681e(b); (2) willfully and negligently failing to follow the proper procedures for communicating with the furnisher and plaintiff in response to a consumer dispute, in violation of 15 U.S.C. § 1681i; and (3) negligently[1] making false representations in responding to plaintiff's request for information, in violation of 15 U.S.C. § 1681g(a)(2).

---

[1] Plaintiff's second amended complaint maintains a claim for the willful violation of § 1681g(a)(2) even though I had previously dismissed that claim.

My October 9, 2018 Memorandum Decision and Order, issued prior to plaintiff filing his second amended complaint, dismissed plaintiff's third cause of action insofar as it alleged a willful violation of 15 U.S.C. § 1681g(a)(2). I held that because defendant's "interpretation of the term 'sources' in § 1681g(a)(2) was sufficiently reasonable, albeit mistaken, to preclude a finding of willfulness," plaintiff did not state a claim for a willful violation.

Plaintiff's instant motion to amend his complaint seeks leave to revive the willful violation claim on the heels of acquiring new information during discovery. Plaintiff also moves for partial summary judgment in favor of his § 1681i(a)(7) claim that defendant willfully failed to provide "the business name and address of any furnisher of information contacted" during the reinvestigation.

Defendant cross moves for summary judgment on all claims.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant successfully does this, the burden shifts to the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

A dispute as to a material fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor" to withstand a motion for summary judgment. Id. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Id. When deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (internal quotation mark omitted).

I. **Defendant's Motion for Summary Judgment**

   A. **Accuracy of Credit Report (15 U.S.C. § 1681e(b))**

Defendant moves for summary judgment against plaintiff's claims that defendant "negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported." Defendant contends that it did not make any inaccurate statements in plaintiff's credit report when it noted that the default judgment was "satisfied."

In support of its position, defendant largely relies on an aspect of this case that was not at all apparent from plaintiff's complaint – that the Civil Court never actually vacated the default

judgment. Rather, "the lawsuit in which Plaintiff's Judgment was entered was dismissed 'with prejudice' following entry of a 'Stipulation of Settlement.'" That the Civil Court judgment was not vacated upon entry of the stipulation is apparent from the submitted exhibits and admitted by plaintiff in his responsive 56.1 Statement, as well as conceded in his opposition papers. As plaintiff points out, the Clerk of the Civil Court entered the word "Settled" as the disposition of the case on the docket, and the court document effecting the disposition used the word "resolved" and noted that the case was "discontinued with prejudice."

It is axiomatic that "to maintain a cause of action under § 1681e(b), a plaintiff must show that . . . the information was inaccurate. See Okocha v. Trans Union LLC, No. 08-cv-3107, 2011 WL 2837594, at *5 (E.D.N.Y. Mar. 31, 2011) (internal citations omitted). A credit entry is inaccurate if it "is patently incorrect, or [if] it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." See Kilpakis v. JPMorgan Chase Fin. Co., LLC, 229 F. Supp. 3d 133, 141 (E.D.N.Y. 2017) (citing Sepulvado v. CSC Credit Serv., Inc., 158 F.3d 890, 895 (5th Cir. 1998). "However, even if the information is inaccurate, a plaintiff must still present some evidence from which a trier of fact could infer that a CRA failed to follow reasonable procedures in preparing [its] credit report." Id.; see Stewart v. Credit Bureau, Inc., 734 F.2d 47, 51 (D.C. Cir. 1984).

Therefore, if it was accurate to say the Civil Court judgment against plaintiff was "satisfied," then plaintiff's § 1681e(b) claims fail. The evidence confirms that the judgment against plaintiff was never vacated. Indeed, at one point plaintiff had moved the Civil Court to vacate the default judgment, but the stipulation of settlement was entered – and the case closed – prior to any ruling on that motion. Because this claim is wholly dependent on the allegation that

5

defendant had described a *vacated* judgment as "satisfied," the fact that the judgment hadn't been vacated undermines plaintiff's argument.

Moreover, upon entering the stipulation of settlement, the Civil Court characterized the case as both "settled" and "resolved," which largely align with the meaning of "satisfied." Given the context and posture of the case prior to settlement – i.e., a default judgment against plaintiff – I can think of no more reasonable a notation than "satisfied" to express that plaintiff had reached an agreement with defendant that either fulfilled or supplanted the default judgment. Perhaps defendant could have just as reasonably said that the default judgment was "settled" or "revised," but that doesn't strike me as any more accurate or even any more helpful to plaintiff's claim. And although plaintiff would rather have the default judgment completely removed from the report, as would have been the case had there been a vacatur, it is undoubtedly important information for creditors to have.

Plaintiff points out that "CPLR § 5020 requires that a judgment cannot be docketed as satisfied without a motion to enter satisfaction of judgment." Therefore, according to him, "the judgement [sic] cannot be considered satisfied in the eyes of the New York State Court system." But N.Y. C.P.L.R. § 5021(2) provides that

> The clerk of the court . . . shall make an entry of the satisfaction or partial satisfaction on the docket of the judgment . . . when the judgment has been wholly or partially satisfied but the judgment debtor cannot furnish the clerk with a satisfaction-piece or partial satisfaction-piece.

Clearly, then, satisfaction of a judgment necessarily precedes entry of the satisfaction, as the state court makes the entry *when* (i.e., on or after) the judgment has been satisfied. It is therefore not the case, as plaintiff suggests, that entry of the satisfaction itself creates the satisfaction.

Because defendant never said that the court had entered a satisfaction of judgment, and only represented that the judgment was satisfied, there is no inconsistency with New York State law.[2]

Thus, the word "satisfied" was not inaccurate under the specific circumstances of this case – and it especially wasn't "patently incorrect." See Kilpakis, 229 F. Supp. 3d at 141. Nor was it "misleading" in such a manner that it could have been "expected to adversely affect credit decisions." Id. In fact, the opposite is likely true, as "[s]atified judgments reflect on a consumer's credit worthiness" and the "favorable track record they imply might be seen by potential creditors to decrease the risk of further credit extensions to the consumer." Beaver v. TRW Corp., No. CIV-87-1214, 1988 WL 123636, at *1 (W.D.N.Y. Nov. 17, 1988).

Accordingly, plaintiff's claims under 15 U.S.C. § 1681e(b) are dismissed.

### B. Reinvestigation (15 U.S.C. § 1681i) Claims

Defendant moves for summary judgment against plaintiff's claims that defendant failed to abide by the various reinvestigation requirements found in 15 U.S.C. § 1681i. Specifically, plaintiff claims that defendant: "(1) fail[ed] to provide notification within the requisite period of time to the furnisher of the information which appeared on Plaintiff's credit report, (2) fail[ed] to provide the furnisher with the requisite information, as required by the FCRA, and (3) misrepresent[ed] the name and address of the actual furnisher contacted in connection with the requested information."

"A plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate in order to prevail on allegations that a consumer reporting agency had failed to reasonably reinvestigate a disputed item." See Fashakin v. Nextel Communications,

---

[2] Even if there were an inconsistency, that would not axiomatically render defendant's statement incorrect for purposes of the FCRA. Courts around the country have held that credit reporting agencies need not engage in legal analysis when investigating disputed information. See, e.g., Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010); DeAndrade v. Trans Union LLC, 523 F.3d 61, 68 (1st Cir. 2008).

No. 05-cv-3080, 2009 WL 790350, at *11 (E.D.N.Y. Mar. 25, 2009) (collecting cases). "This rule is based on both the purpose of the FCRA, to protect consumers against the compilation and dissemination of inaccurate credit information, and the fact that it is difficult to see how a plaintiff could prevail on a claim for damages under § 1681i without a showing that the disputed information disclosed by the credit agency was, in fact, inaccurate." Id. (internal quotation marks and alterations omitted) (citing DeAndrade, 523 F.3d at 67).

Plaintiff argues that this reasoning should not apply to certain claims under § 1681i(a)(6) and (a)(7) because those sections of the FCRA "require actions beyond and after" the actual investigation. For example, § 1681i(a)(6)(B)(iii) obligates a reporting agency to affirmatively send a notice to the consumer describing the procedures it used to investigate its report. According to plaintiff, because such actions are not connected to the actual investigatory steps, failures to comply should not be rendered excusable just because the reported information was accurate.

Although plaintiff's analysis has some attraction, I disagree with its conclusion. The FCRA was chiefly intended to protect against inaccurate credit reporting, see 15 U.S.C. § 1681(a)(1), and "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report," see Equifax Inc. v. F.T.C., 678 F.2d 1047, 1048 (11th Cir. 1982) (internal quotation marks omitted). Additionally, the specific and express purpose of § 1681i is to set forth reinvestigation procedures "in case of [a] disputed accuracy." It thus makes perfect sense that the penalties accompanying violations of § 1681i fall away where those purposes have not been compromised and the accuracy of the disputed information confirmed.

Here, because the disputed information was not inaccurate, plaintiff's reinvestigation claims necessarily fail. Accordingly, plaintiff's claims under 15 U.S.C. § 1681i are dismissed.

### C. Consumer Disclosure Claims (15 U.S.C. § 1681g(a)(2))

Defendant moves for summary judgment against plaintiff's claim that defendant negligently "misrepresent[ed] the source from which Equifax obtains public records information," in violation of 15 U.S.C. § 1681g(a)(2). As alleged by plaintiff, in response to his inquiry regarding defendant's method of verifying the judgment information, defendant falsely represented that it obtained the information from the Civil Court. However, it appears that defendant actually obtained the information from Lexis, which, in turn, obtained it from the Civil Court. Although I have previously held that defendant's representations in this regard were "sufficiently reasonable" to preclude a claim for a willful violation of § 1681g(a)(2), that still leaves the possibility that defendant was negligent.

Defendant argues in the instant motion, however, that even the negligence claim "fail[s] as a matter of law because Plaintiff cannot show that he suffered any actual damages resulting from Equifax's alleged conduct." Plaintiff argues otherwise, saying that he "spent over a year fighting with Equifax," expending valuable time and resources to resolve defendant's inaccurate responses. In addition, plaintiff claims that he "experienced repeated and prolonged stress, frustration, anxiety, embarrassment and distress based on Equifax's actions." I agree with defendant that plaintiff cannot prove non-speculative damages, but I also see the problem as reflecting a lack of injury in fact that would confer standing on plaintiff.

"In general[,] [a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." See 15 U.S.C. § 1681o. However, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016). Rather, in order to maintain an action under the FCRA, "a

plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent'" as a result of a violation. Id. at 1548.

Denial of credit and other similarly adverse consequences are often the basis of FCRA damages, but "emotional damages may also be freestanding . . . where an inaccuracy *alone* causes emotional damages." See Wenning v. On-Site Manager, Inc., No. 14 Civ. 9693, 2016 WL 3538379, at *19 (S.D.N.Y. June 22, 2016) (citing Guimond v. Trans Union Credit Info. Co, 45 F.3d 1329, 1333 (9th Cir. 1995). Moreover, a plaintiff cannot "recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency." See Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 475 (2d Cir. 1995). In addition, a plaintiff may recover his out-of-pocket expenses resulting from a violation of the FCRA. See Fischl v. Gen. Motors Acceptance Corp., 708 F.2d 143, 148 (5th Cir. 1983). But such damages for a negligent violation of the statute must be "caused by" that violation. See Wenning, 2016 WL 3538379, at *8-9.[3]

In his sworn declaration, plaintiff states that he "took time off work" and sent "many" letters by certified mail in attempting to "deal with these issues." Plaintiff also presents evidence that he spent about a year engaged in discussions with defendant and the court to get to the bottom of the situation.

To understand why plaintiff has not shown injury in fact sufficient to confer standing, it helps to compare the situation that plaintiff says should have occurred under the FCRA with what actually did occur. Plaintiff's argument necessarily would require defendant to have disclosed both the Civil Court and Lexis as "sources" under § 1681g(a)(2), instead of disclosing only the Civil Court. As a result, plaintiff contends, he suffered emotional injury and out of

---

[3] Of course, punitive damages are only available for willful violations of the FCRA, see 15 U.S.C. 1681n(a)(2), which I have determined are not present here.

10

pocket expenses by having to go between the defendant and only the Civil Court, trying to get the entry on his credit report changed.

However, if defendant had disclosed both the Civil Court and Lexis, plaintiff still would have suffered the same emotional and out of pocket damages. He still would have undertaken the same actions to try to have his credit report amended the way he wanted it. Any damages he suffered were therefore not caused by the failure to disclose two sources instead of one; they were caused by plaintiff himself, who decided to thoroughly investigate an entry that I have already found was accurate.

I suppose there is an argument that plaintiff had some marginal increase in his out of pocket costs or emotional damages because he was only given one of two "sources." But plaintiff has made no effort to demonstrate that delta, and I do not see how he could.

> To establish Article III standing, a plaintiff must establish the following three elements as an "irreducible constitutional minimum": (1) injury-in-fact, meaning "an actual or imminent" and "concrete and particularized" harm to a "legally protected interest"; (2) causation of the injury, meaning that the injury is "fairly traceable" to the challenged action of the defendant; and (3) redressability, meaning that it must be "likely," not speculative, that a favorable decision by a court will redress the injury.

Gambles v. Sterling Infosystems, Inc., 234 F. Supp. 3d 510, 517 (S.D.N.Y. 2017) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and quotations omitted)).

I do not see how plaintiff could demonstrate in any non-speculative manner the amount of any marginal damage between his having received one source instead of two. Any testimony that he would give to quantify it would be entirely arbitrary, as would any purported "expert" opinion to break it out.[4]

---

[4] As suggested above, even if this hypothetical sliver of extra expense was somehow sufficient to confer Article III standing, plaintiff certainly has not provided enough evidence to raise a genuine dispute of fact as to his out-of-pocket damages under the summary judgment standard. See Anderson, 477 U.S. at 256.

In addition, plaintiff cannot claim compensable harm for credit denial because the report information was accurate. Nor can plaintiff seek emotional damages as defendant never disseminated false "derogatory information" to a third-party. Plaintiff contends that he "was very embarrassed to have to share [his] private, financial circumstances with the court [clerk staff]" in order to "resolve the issue," but that was not information disseminated "from a credit reporting agency." See Casella, 56 F.3d at 475. Rather, it was plaintiff *himself* who disseminated the information, albeit in order to unravel defendant's allegedly misleading statements. That is simply not enough to establish emotional damages under this Circuit's precedent.

Stated otherwise, the emotional cost and out of pocket expenses that plaintiff incurred because he wanted to track down what I have found to be an accurate credit report entry is neither injury in fact nor "damages;" it does not result from defendant identifying only the Civil Court instead of Lexis as its source because plaintiff was going to incur those costs regardless. The only possible damage would be the difference between having received one or two sources, and plaintiff has no way to prove that there is any difference without asking a jury to speculate.

Plaintiff's claim under § 1681(g)(2) is dismissed for lack of standing.

## II. Plaintiff's Motion for Partial Summary Judgment for His Misrepresentation Claim (15 U.S.C. § 1681i(a)(7))

Plaintiff moves for summary judgment in favor of his claims under 15 U.S.C. § 1681i(a)(7), alleging that defendant misrepresented the name and address of the actual furnisher contacted in connection with the requested information. Because I have dismissed all of plaintiff's § 1681i reinvestigation claims, see Section I.B supra, this motion is denied.

### III. Plaintiff's Motion to Amend Complaint

Plaintiff moves to amend his complaint for a third time, here to revive his § 1681g claim that defendant willfully "falsely misrepresented that it obtained information concerning his judgment from the Kings County Civil Court." I had previously dismissed the willfulness claim – while leaving the negligence claim – because defendant's "interpretation of the term 'sources' in § 1681g(a)(2) was sufficiently reasonable, albeit mistaken, to preclude a finding of willfulness."

Plaintiff asserts that "critical information" uncovered in discovery will allow him to sufficiently plead a willful violation of § 1681g. Specifically, he says that "[t]hrough the taking of the depositions of Defendant Equifax's corporate representatives, it became clear that no interpretation of the word 'source' was ever formally conducted." And, further, that "it appears that Equifax does not have a clear understanding of the actions taken by Lexis, its third party contractor, when a dispute on a judgment occurs and Lexis is requested to verify the information." Plaintiff therefore reasons that defendant's "actions were willful in failing to identify that Lexis was the provider or source of the information, not the courthouse directly."

A court may deny leave to amend a complaint for various reasons, including undue delay, bad faith, unfair prejudice to the opposing party, or futility of amendment. See Forman v. Davis, 371 U.S. 178, 182 (1962). An amendment would be futile if "a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Even absent a knowing violation of the FCRA, a plaintiff may plead a willful violation by plausibly alleging that a credit reporting agency acted in "reckless disregard of a requirement of

13

the FCRA." See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 71 (2007). Such reckless disregard occurs when "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 50. But if a company's reading of the statute was not "objectively unreasonable," then it did not willfully violate the statute. Id. Furthermore, if there "is an objectively reasonable interpretation of the statute that would allow the conduct in question," then "whether the Defendant actually acted on" the reasonable interpretation is irrelevant. See Kivo v. Blumberg Exelsior, Inc., 982 F. Supp. 2d 217, 222 (E.D.N.Y. 2013) (citing Long v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 377 (3d Cir. 2012)).

In this case, all of the proposed amendments speak to defendant's subjective understanding of the word "sources" in § 1681g(a)(2) at the time it determined what "sources of the information" it should disclose to plaintiff. But because I need not determine whether defendant *actually* acted on any specific interpretation, its contemporaneous understanding of "sources" is irrelevant. See id. Thus, my previous holding that defendant acted in accordance with an objectively reasonable interpretation of the word "sources" remains unchanged.

However, plaintiff objects to an interpretation of Safeco that would ignore whether defendant actually interpreted the word "sources" before acting. Instead, he insists that a CRA must have based its conduct on an objectively reasonable interpretation in order to avail itself of the Safeco defense. Even if I were to agree with plaintiff, I would find that defendant necessarily interpreted the word "sources" in the suggested reasonable manner because an understanding of that word was fundamental to the actions it undertook. Indeed, it would be logically impossible for defendant *not* to have interpreted the word "sources" when it was determining what the

14

relevant sources to disclose actually were, pursuant to its obligations under § 1681g.[5]  Any way plaintiff slices it, the amendments would be futile.  See Dougherty, 282 F.3d at 88.

## CONCLUSION

Plaintiff's [36] motion to amend his second amended complaint is denied.  Plaintiff's [37] motion for partial summary judgment is denied.  Defendant's [38] motion for summary judgment is granted.  The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff, dismissing the case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       January 2, 2020

---

[5] I disagree with plaintiff's unsupported suggestion that an interpretation of the FCRA must have been formally adopted by the company before it could qualify for the Safeco defense.